## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19-20044-JAR |
| BRUCE L. HAY, | |
| Defendant. | |

## MEMORANDUM AND ORDER

Suspecting that Defendant Bruce Hay had falsely claimed he was disabled to receive disability payments, federal agents surveilled him without a warrant to obtain evidence of his physical capabilities.  The agents installed a pole camera on public property across the street from his residence and recorded nearly ten weeks' worth of footage.  Before the Court is Hay's Motion to Suppress Pole Camera Footage (Doc. 49).  He contends that the use of a pole camera to monitor the front of his residence constituted a warrantless search in violation of the Fourth Amendment to the U.S. Constitution, Tenth Circuit precedent to the contrary notwithstanding.  The motion is fully briefed,[1] and the Court heard oral argument on December 21, 2021.  For the following reasons, the Court denies Hay's motion.

### I.      Background

Hay is charged with four counts of theft of public money, in violation of 18 U.S.C. § 641.  The charges stem from an investigation by the U.S. Department of Veterans Affairs, Office of Inspector General ("VA OIG"), Criminal Investigations Division, into allegations that Hay, a

---

[1] Hay did not file a reply brief.

veteran receiving disability payments, falsely claimed disability.  The following facts, drawn primarily from Hay's motion to suppress, are undisputed for purposes of the motion.[2]

As part of the investigation, VA OIG agents surveilled Hay to determine whether he engaged in activities that belied his claims of disability.  In October 2016, agents installed a hidden surveillance camera outside a public high school across from Hay's residence on Parker Avenue in Osawatomie, Kansas.  The camera faced the front of Hay's residence, including his porch, front yard, and driveway.  Hay lives less than 200 feet from the high school.

Once installed, the pole camera monitored Hay's residence continuously for almost eight weeks, from October 6 to November 29, 2016.  The agents then turned the camera off, but did not remove it.  Then, in 2017, the agents turned the camera back on twice, though for shorter periods: from March 24 to March 30, 2017, and from May 2 to May 8, 2017.  The camera was motion-activated, and agents could remotely control its zoom, pan, and tilt features.  "If a VA-OIG agent wished to zoom in on a license plate, for example, the investigating agent could call a tech agent who would then, working remotely, zoom the camera at the other agent's request."[3] Despite these features, the camera did not record audio or allow agents to see inside Hay's residence.  All the camera's footage was stored, and agents could later download and replay it. The agents did not seek a warrant before installing the pole camera.

Hay now moves to suppress evidence obtained from the pole camera, arguing that the warrantless pole camera surveillance, which lasted "a cumulative period of 68 days," was a search that violated the Fourth Amendment.[4]

---

[2] Neither party asked this Court to conduct an evidentiary hearing.

[3] Doc. 49 at 2.

[4] *Id.* at 3.

## II.     Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[5]  Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."[6]

The Supreme Court has articulated two tests to determine when a search occurs within the meaning of the Fourth Amendment.  The first, the common-law trespassory test, identifies a search when the government "obtains information by physically intruding on a constitutionally protected area."[7]  The second, the reasonable-expectation-of-privacy test derived from Justice Harlan's concurrence in *Katz v. United States*, recognizes that a search can take place "even in the absence of a trespass."[8]  Under this test, a search occurs when the government violates a person's "reasonable expectation of privacy."[9]  Courts employ a "two-part inquiry" to assess the legitimacy of a privacy expectation: "first, has the individual manifested a subjective expectation of privacy in the object of the challenged search?  Second, is society willing to recognize that expectation as reasonable?"[10]

Because there was no physical intrusion, Hay challenges the pole camera surveillance under the reasonable-expectation-of-privacy test.  As Hay recognizes, however, the Tenth Circuit has already conducted that analysis in a case with similar facts, *United States v. Jackson*, and it

---

[5] U.S. Const. amend. IV.

[6] *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

[7] *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012); *see also United States v. Knotts*, 460 U.S. 276, 286 (1983) (Brennan, J., concurring in the judgment).

[8] *Jones*, 565 U.S. at 414 (Sotomayor, J., concurring).

[9] *Katz*, 389 U.S. at 360 (Harlan, J., concurring); *see also Kyllo v. United States*, 533 U.S. 27, 33 (2001); *Smith v. Maryland*, 442 U.S. 735, 740–41 (1979).

[10] *California v. Ciraolo*, 476 U.S. 207, 211 (1986).

found no Fourth Amendment search.[11]  There, the Tenth Circuit confronted a Fourth Amendment challenge to the use of pole cameras installed without a warrant to monitor residences.  Law enforcement in *Jackson* had affixed "video cameras on the tops of telephone poles overlooking the residences of" suspected leaders of drug organizations.[12]  "[B]oth of these cameras could be adjusted by officers at the police station, and could zoom in close enough to read a license plate, [but] neither had the capacity to record sound, and neither could view inside of the houses."[13]

In assessing whether the pole camera surveillance constituted a Fourth Amendment search, the Tenth Circuit asked "whether [the defendant] had a reasonable expectation of privacy in the area viewed by the cameras."[14]  Relying on longstanding Supreme Court precedent, the Tenth Circuit stated: "The use of video equipment and cameras to record activity visible to the naked eye does not ordinarily violate the Fourth Amendment.  In addition, activity a person knowingly exposes to the public is not a subject of Fourth Amendment protection, and thus, is not constitutionally protected from observation."[15]  Because the pole cameras in *Jackson* "were incapable of viewing inside the houses, and were capable of observing only what a passerby would easily have been able to observe," the Tenth Circuit concluded that the government did not invade any reasonable expectation of privacy.[16]  Almost two decades later, the Tenth Circuit in *United States v. Cantu*, a case with "quite similar" facts, affirmed a district court's reliance on

---

[11] 213 F.3d 1269 (10th Cir.), *vacated on other grounds*, 531 U.S. 1033 (2000).

[12] *Id.* at 1276.

[13] *Id.*

[14] *Id.* at 1280.

[15] *Id.* at 1280–81 (first citing *Dow Chem. Co. v. United States*, 476 U.S. 227 (1986); then citing *California Ciraolo*, 476 U.S. 207, 213 (1986); and then citing *Katz v. United States*, 389 U.S. 347, 351 (1967)).

[16] *Id.* at 1281.

*Jackson*'s holding in denying a motion to suppress evidence obtained from the warrantless use of a pole camera.[17]

Here, just like in *Jackson* (and *Cantu*), the pole camera could not view inside Hay's house; the camera could only capture the front of his residence, an area plainly visible to the public. Under *Jackson*, then, Hay lacked a reasonable expectation of privacy in the area viewed by the camera, so the pole camera surveillance was not a search under the Fourth Amendment.

Hay does not attempt to distinguish *Jackson*. Instead, he contends *Jackson* does not control the outcome of this case after *Carpenter v. United States*, where the Supreme Court found an expectation of privacy in historical cell-site location records,[18] because *Carpenter* "upended" *Jackson*'s reasoning.[19] Hay argues that, under *Carpenter* and the concurring opinions in *United States v. Jones*,[20] he has a "reasonable expectation of privacy in his movements over time."[21] And he urges this Court to find that the prolonged pole camera surveillance here invaded that privacy expectation. While Hay does not expressly use the term, his argument is premised on a "mosaic theory" of the Fourth Amendment, under which law enforcement activities that are not searches in isolation may nevertheless become a search when viewed in the aggregate.[22]

For the reasons explained below, the Court is not persuaded by Hay's argument that it may disregard *Jackson*'s no-search ruling in light of *Carpenter*. *Jackson* remains binding precedent in the Tenth Circuit, and it forecloses Hay's argument that the pole camera

---

[17] 684 F. App'x 703, 703 (10th Cir. 2017) (unpublished).

[18] –U.S.–, 138 S. Ct. 2206, 2220 (2018).

[19] Doc. 49 at 6.

[20] 565 U.S. 400 (2012).

[21] Doc. 49 at 3.

[22] *See* Orin S. Kerr, *The Mosaic Theory of the Fourth Amendment*, 111 Mich. L. Rev. 311, 320 (2012).

surveillance invaded a reasonable expectation of privacy.  But even if the Tenth Circuit were to accept the mosaic theory, *Carpenter* and the *Jones* concurrences do not support finding a Fourth Amendment search here.

###### A.      The Mosaic Theory of the Fourth Amendment

The Court begins by discussing the decisions on the mosaic theory in *Jones* and *Carpenter*, the two cases on which Hay relies.  Broadly speaking, the mosaic theory "holds that, when it comes to people's reasonable expectation of privacy, the whole is greater than the sum of its parts."[23]  "More precisely, it suggests that the government can learn more from a given slice of information if it can put that information in the context of a broader pattern, a mosaic."[24] Thus, under the mosaic theory, courts "apply the Fourth Amendment search doctrine to government conduct as a collective whole rather than in isolated steps," and consider "whether a set of nonsearches aggregated together amount to a search because their collection and subsequent analysis creates a revealing mosaic."[25]

The mosaic theory first appeared in Fourth Amendment jurisprudence in *United States v. Maynard*, the D.C. Circuit opinion later reviewed by the Supreme Court under a different name, *United States v. Jones*.[26]  In *Maynard*, the D.C. Circuit held that the government's use of a GPS device to monitor a car's location for twenty-eight days was a Fourth Amendment search under

---

[23] *United States v. Tuggle*, 4 F.4th 505, 517 (7th Cir. 2021) (quoting Matthew B. Kugler & Lior Jacob Strahilevitz, *Actual Expectations of Privacy, Fourth Amendment Doctrine, and the Mosaic Theory*, 2015 Sup. Ct. Rev. 205, 205 (2015)), *cert. denied*, 142 S. Ct. 1107 (2022).

[24] Kugler & Strahilevitz, *supra* note 23, at 205.

[25] Kerr, *supra* note 22, at 320.

[26] *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), *aff'd sub nom. United States v. Jones*, 565 U.S. 400 (2012).

the reasonable-expectation-of-privacy test.[27]  The D.C. Circuit relied on the mosaic theory to

explain why the month-long GPS monitoring of the car constituted a Fourth Amendment search:

> [W]e hold the whole of a person's movements over the course of a
> month is not actually exposed to the public because the likelihood
> a stranger would observe all those movements is not just remote, it
> is essentially nil.  It is one thing for a passerby to observe or even
> to follow someone during a single journey as he goes to the market
> or returns home from work.  It is another thing entirely for that
> stranger to pick up the scent again the next day and the day after
> that, week in and week out, dogging his prey until he has identified
> all the places, people, amusements, and chores that make up that
> person's hitherto private routine.[28]

"The whole of one's movements over the course of a month is not constructively exposed to the

public either," the D.C. Circuit explained, because the whole reveals more than the sum of its

parts:

> Prolonged surveillance reveals types of information not revealed
> by short-term surveillance, such as what a person does repeatedly,
> what he does not do, and what he does ensemble.  These types of
> information can each reveal more about a person than does any
> individual trip viewed in isolation.  Repeated visits to a church, a
> gym, a bar, or a bookie tell a story not told by any single visit, as
> does one's not visiting any of these places over the course of a
> month.  The sequence of a person's movements can reveal still
> more; a single trip to a gynecologist's office tells little about a
> woman, but that trip followed a few weeks later by a visit to a baby
> supply store tells a different story.  A person who knows all of
> another's travels can deduce whether he is a weekly church goer, a
> heavy drinker, a regular at the gym, an unfaithful husband, an
> outpatient receiving medical treatment, an associate of particular
> individuals or political groups—and not just one such fact about a
> person, but all such facts.[29]

---

[27] *Id.* at 568.

[28] *Id.* at 560.

[29] *Id.* at 561–62.

The D.C. Circuit held that, considered in the aggregate, the prolonged GPS monitoring amounted to a Fourth Amendment search because it "reveal[ed] an intimate picture of the subject's life that he expects no one to have—short perhaps of his spouse."[30]

The Supreme Court in *Jones* unanimously agreed that a Fourth Amendment search took place but split on why.[31]  Writing for the majority, Justice Scalia affirmed on a narrow trespass-based theory, holding that the GPS monitoring was a search because installing the device on the car constituted a common-law trespass.[32]  Although the *Jones* majority did not endorse the mosaic theory, five justices—across two concurring opinions penned by Justices Alito and Sotomayor—embraced the D.C. Circuit's mosaic approach.[33]

Concurring in the judgment, Justice Alito, joined by Justices Ginsburg, Breyer, and Kagan, criticized Justice Scalia's reliance on what he described as an "18th-century tort law" approach to resolve questions of 21st-century surveillance.[34]  Justice Alito would have applied the reasonable-expectation-of-privacy test and asked whether the GPS monitoring "involved a degree of intrusion that a reasonable person would not have anticipated":

> Under this approach, relatively short-term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable.  But the use of longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy.  For such offenses, society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period. . . .[35]

---

[30] *Id.* at 563.

[31] *See United States v. Jones*, 565 U.S. 400 (2012).

[32] *Id.* at 404–411.

[33] Kerr, *supra* note 22, at 326–28.

[34] *Jones*, 565 U.S. at 418 (Alito, J., concurring in the judgment).

[35] *Id.* at 430.

Where is the line?  Justice Alito did not say: "We need not identify with precision the point at which the tracking of this vehicle became a search, for the line was surely crossed before the 4-week mark."[36]  This section of Justice Alito's concurrence cites no authority, but "scholars have read his opinion to 'echo[] the D.C. Circuit's mosaic approach in *Maynard*.'"[37]

Concurring separately, Justice Sotomayor explained that she joined the majority because she agreed that a search occurs, "at a minimum," when the government physically intrudes on a constitutionally protected area to obtain information.[38]  But she also agreed with Justice Alito that the GPS monitoring was a search independent of the physical intrusion.  Justice Sotomayor focused on the "unique attributes of GPS surveillance" that she found troubling, including its precision, efficiency, and inexpensiveness.[39]  She emphasized that "GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations."[40]  In Justice Sotomayor's view, these unique attributes implicate privacy interests:

> I would take these attributes of GPS monitoring into account when considering the existence of a reasonable societal expectation of privacy in the sum of one's public movements.  I would ask whether people reasonably expect that their movements will be recorded and aggregated in a manner that enables the government to ascertain, more or less at will, their political and religious beliefs, sexual habits, and so on. . . .[41]

---

[36] *Id.*

[37] *United States v. Tuggle*, 4 F.4th 505, 518 (7th Cir. 2021) (alteration in original) (quoting Kerr, *supra* note 22, at 327), *cert. denied*, 142 S. Ct. 1107 (2022).

[38] *Jones*, 565 U.S. at 413 (Sotomayor, J., concurring).

[39] *Id.* at 415–16.

[40] *Id.* at 415.

[41] *Id.* at 416.

Like Justice Alito's concurrence, scholars recognize that "[t]his passage clearly echoes the mosaic theory."[42]

In 2018, the Supreme Court decided *Carpenter*, which concerned the government's acquisition of historical cell-site location information ("CSLI")—the time-stamped records a phone generates each time it connects to a cell site.[43]  The Supreme Court held that "accessing seven days of CSLI constitute[d] a Fourth Amendment search" because it invaded the defendant's reasonable expectation of privacy "in the record of his physical movements as captured through CSLI."[44]  In reaching this conclusion, the Court focused on the revealing nature of CSLI: when there is enough of it, CSLI "provides an all-encompassing record of the holder's whereabouts," opening "an intimate window into a person's life" that reveals "not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'"[45]  The *Carpenter* Court also pointed out that "a majority of this Court has already recognized that individuals have a reasonable expectation of privacy in the whole of their physical movements," citing the *Jones* concurrences.[46]  "Scholars describe the *Carpenter* majority as effectively 'endors[ing] the mosaic theory of privacy.'"[47]

As the Seventh Circuit recently stated in *United States v. Tuggle*, however, the Supreme Court's "passing endorsement" of the mosaic theory in *Carpenter* was not a "full and affirmative adoption."[48]  The Seventh Circuit explained:

---

[42] *Tuggle*, 4 F.4th at 519 (alteration in original) (quoting Kerr, *supra* note 22, at 328).

[43] *Carpenter v. United States*, –U.S.–, 138 S. Ct. 2206, 2211 (2018).

[44] *Id.* at 2217 & n.3.

[45] *Id.* at 2217 (quoting *Jones*, 565 U.S. at 415 (Sotomayor, J., concurring)).

[46] *Id.*

[47] *Tuggle*, 4 F.4th at 519 (alteration in original) (quoting Paul Ohm, *The Many Revolutions of* Carpenter, 32 Harv. J.L. & Tech. 357, 373 (2019)).

[48] *Id.*

> At a minimum, the Supreme Court has not yet required lower
> courts to apply it.  Moreover, many courts that have considered the
> theory have expressed disapproval, although not without
> exception.  Additionally, the mainstream academic view has urged
> courts to reject the theory.  Accordingly, whether or not the theory
> has merit from a theoretical or policy standpoint, Tuggle has not
> presented us with binding caselaw indicating that we *must* apply
> the mosaic theory.[49]

Hay has not pointed to any such binding precedent, either.

> **B.**   ***United States v. Jackson* remains binding precedent in the Tenth Circuit and precludes finding the pole camera surveillance was a Fourth Amendment search**

The Court now turns to Hay's argument that *Jackson*'s no-search ruling no longer binds this Court because of *Carpenter*.  Hay concedes that *Jackson* is on point, but he argues that its reasoning—that "activity a person knowingly exposes to the public is not a subject of Fourth Amendment protection"[50]—was "upended by *Carpenter*."[51]  The Court disagrees.

The basic Fourth Amendment principle relied on by the Tenth Circuit in *Jackson* comes from *Katz*, which stated: "The Fourth Amendment protects people, not places.  What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."[52]  Relatedly, the Tenth Circuit cited the portion of *California v. Ciraolo* that, itself citing *Katz*, explained "[t]he Fourth Amendment protection of the home has never extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares."[53]

---

[49] *Id.* (footnotes omitted).

[50] 213 F.3d 1269, 1281 (10th Cir.), *vacated on other grounds*, 531 U.S. 1033 (2000).

[51] Doc. 48 at 6.

[52] *Katz v. United States*, 389 U.S. 347, 351 (1967)).

[53] 476 U.S. 207, 213 (1986).

Hay argues that *Carpenter* "upended" these principles, but *Katz* and *Ciraolo* remain good law.  As the First Circuit explained in *United States v. Moore-Bush*, which reversed a district court decision that departed from circuit precedent holding that eight months of pole camera surveillance did not constitute a search, *Carpenter* "leaves intact" these two cases.[54]  The First Circuit continued, "[n]owhere in the *Carpenter* opinion does the Court suggest that [these] cases, or any part of the Court's existing Fourth Amendment framework involving the lack of Fourth Amendment protection for places a defendant knowingly exposes to public view, has been overruled or modified."[55]  The *Carpenter* Court also emphasized that its ruling was "a narrow one," limited to the specific question presented in that case, and it did not "call into question conventional surveillance techniques and tools, such as security cameras."[56]  This Court therefore cannot read *Jackson* as relying on reasoning that *Carpenter* has upended.

Still, Hay urges that "*Carpenter* compels the reconsideration" of the constitutionality of warrantless pole camera surveillance of private property when, as here, it is prolonged.[57]  Hay argues that although he could expect to be seen when he left his home, the same cannot be said of his public movements over time in the aggregate.  In other words, Hay thinks this Court should apply the mosaic theory and treat long-term pole camera surveillance differently than short-term surveillance when considering the existence of a reasonable expectation of privacy—something *Jackson* (and *Cantu*) did not do.

Hay may well be right that the Tenth Circuit should, in light of *Carpenter*, reconsider *Jackson* and broaden the application of *Carpenter*'s mosaic reasoning to pole camera

---

[54] 963 F.3d 29, 41 (1st Cir.), *reh'g en banc granted, opinion vacated*, 982 F.3d 50 (1st Cir. 2020) (mem.) (granting en banc review to consider whether to overrule *United States v. Bucci*, 582 F.3d 108 (1st Cir. 2009)).

[55] *Id.*

[56] *Carpenter v. United States*, –U.S.–, 138 S. Ct. 2206, 2220 (2018).

[57] Doc. 49 at 4.

surveillance.  But this Court's role is to apply Tenth Circuit precedent, not to reconsider it.  In the absence of clear Supreme Court precedent overruling *Jackson*, this Court will "follow the case which directly controls, leaving to the [Tenth Circuit] the prerogative of overruling its own decisions."[58]  Thus, the Court concludes that *Jackson*'s no-search ruling remains binding on district courts in the Tenth Circuit and compels this Court to find that the warrantless pole camera surveillance here did not constitute a Fourth Amendment search.

### C. The pole camera surveillance was not a Fourth Amendment search under the mosaic theory either

Even if the Court were to apply the mosaic theory, it would not help Hay.  In *Jones* and *Carpenter*, the justices were concerned about the government's use of surveillance tools that could "generate[] a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations."[59]  Because the GPS and CSLI technologies at issue in those cases could reveal the whole of a person's movements, the *Jones* concurrences and *Carpenter* majority found the Fourth Amendment implicated.  Relying on those two cases, Hay argues that VA OIG agents violated his reasonable expectation of privacy in the record of his movements because, for weeks, the pole camera recorded "each and every step he took," which in turn revealed "intimate, personal details" about his relationships and associations.[60]

But that is not what happened here.  The pole camera was fixed in place, so it could view only what happened in front of it.  While it is true that the camera could record every movement Hay made within its view, the camera could not track his movements anywhere else.  Unlike the

---

[58] *Agostini v. Felton*, 521 U.S. 203, 207 (1997).

[59] *United States v. Jones*, 565 U.S. 415 (2012). (Sotomayor, J., concurring); *Carpenter* 138 S. Ct. at 2217.

[60] Doc. 49 at 4, 6.

GPS and CSLI technologies in *Jones* and *Carpenter*, the camera "exposed no details about where [Hay] traveled, what businesses he frequented, with whom he interacted in public, or whose homes he visited, among many other intimate details of his life."[61]  Far from revealing the "whole of his physical movements,"[62] the pole camera surveillance revealed just a small part of that much larger whole, even if an important one.

Hay raises legitimate concerns about the duration of the pole camera surveillance.  But the pole camera surveillance in this case does not present the same privacy concerns that animated the majority in *Carpenter* and the concurrences in *Jones*.  Thus, even applying the mosaic theory, the prolonged pole camera surveillance did not invade any reasonable expectation of privacy. !

For these reasons, the Court concludes that no Fourth Amendment search took place here. The Court therefore need not consider the government's alternative argument that, even if the pole camera surveillance amounted to a search, the good-faith exception to the exclusionary rule would prevent suppression.  Hay's motion to suppress is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Bruce Hay's Motion to Suppress (Doc. 49) is **denied**.

**IT IS SO ORDERED.**

Dated: May 5, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[61] *United States v. Tuggle*, 4 F.4th 505, 524 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 1107 (2022).

[62] *Carpenter*, 138 S. Ct. at 2219.