```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF KANSAS
 2
     UNITED STATES OF AMERICA,        )
 3                                    )
             Plaintiff,               )
 4                                    ) Case No. 19-20044-JAR
     vs.                              ) Circuit No. 22-3276
 5                                    )
     BRUCE L. HAY,                    )
 6                                    ) Kansas City, Kansas
             Defendant.               ) Date:  December 13, 2022
 7     .........................
```

```
 8                    TRANSCRIPT OF SENTENCING
               BEFORE THE HONORABLE JULIE A. ROBINSON
 9            SENIOR UNITED STATES DISTRICT COURT JUDGE
```

```
10                    A P P E A R A N C E S

11    FOR THE PLAINTIFF:

12
             Mr. Christopher Oakley
13           OFFICE OF THE UNITED STATES ATTORNEY
             500 State Avenue
14           Kansas City, Kansas 66101

15    FOR THE DEFENDANT:

16           Ms. Chekasha Ramsey
             OFFICE OF THE FEDERAL PUBLIC DEFENDER
17           500 State Avenue
             Suite 201
18           Kansas City, Kansas 66101

19

20

21

22

23

24  ─────────────────────────────────────────────────
              Proceedings recorded by machine shorthand,
25      transcript produced by computer-aided transcription.
```

1             P R O C E E D I N G S

2       THE COURT:  We're here in United States versus Bruce Hay.

3  The case number is 19-20044.  Your appearances, please.

4           MR. OAKLEY:  May it please the Court, the United

5  States appears by Chris Oakley.

6           MS. RAMSEY:  Good morning, Your Honor.  Che Ramsey on

7  behalf of Bruce Hay who appears in person with counsel.

8        THE COURT:  All right.  We are here for sentencing

9  this morning.  I have received a sentencing memorandum filed by

10 Mr. Hay.  I've received the government's responsive memorandum.

11 Mr. Hay's sentencing memorandum has a number of attachments,

12 including letters from family and friends, which I have

13 reviewed.

14           The presentence report, the government has no

15 objections.  The defendant states that he generally objects to

16 the facts contained in the presentence report because it fails

17 to include any evidence that was presented by the defense at

18 the trial.  He asked that the court rely on the trial testimony

19 in this case.  I do not think this is an objection I

20 necessarily need to rule upon.  I am considering all of the

21 testimony presented during the trial.

22           Obviously in ruling on the motion for judgment, I

23 viewed the evidence in the light most favorable to the

24 government, which I'm required to do under the law in

25 determining whether a reasonable jury could reach a guilty

1    verdict, and I found that they could.

2            But obviously in deciding the appropriate sentence for

3    Mr. Hay, I rely on all of the evidence and all of the things

4    that have been offered in the presentence report as well as

5    what's been offered in the sentencing memorandum.  By statute

6    I'm required to consider all relevant information.

7            All right.  So are there -- is there any evidence

8    that's going to be presented by Mr. Hay or by the government at

9    today's hearing?

10           MS. RAMSEY:  No, Your Honor.

11           MR. OAKLEY:  No, Your Honor.

12           THE COURT:  All right.  So at this point do you -- are

13   you ready to make argument about an appropriate sentence and we

14   can go forward?  Is that what you all anticipate doing?

15           MS. RAMSEY:  Yes, Your Honor.

16           THE COURT:  All right.  I'll hear from you,

17   Ms. Ramsey.

18           MS. RAMSEY:  Thank you, Your Honor.

19           Your Honor, I don't intend to repeat what's filed in a

20   sentencing memorandum, but I do ask the court to consider

21   Mr. Hay's diagnosis of PTSD in conjunction with the testimony

22   that the court heard which was presented by the defense.

23           The court heard from Mr. Hay -- multiple community

24   members: Mr. Hay's pastor, his daughter, his mother-in-law, and

25   his friends in the community, and what they all informed the

1  court was is that Mr. Hay suffers from an illness which we

2  maintain is conversion disorder, but with the comorbid disorder

3  of PTSD, and those symptoms are debilitating when they occur.

4         Much of the symptoms are aggravated by issues that he

5  has with the PTSD which the court heard testimony about as a

6  reaction to his service in the Army.  We asked the court to

7  consider that as part of his history and characteristics in

8  considering what sentence is appropriate in this case.

9         We also ask the court to consider the timeframe from

10 which this case was first filed until reaching today and

11 Mr. Hay's behavior during that timeframe.  He has been

12 law-abiding.  He has taken care of his family.  He has a

13 courtroom full of support from his family and friends and from

14 his church.

15        I will add the one thing we did not put in our

16 sentencing memorandum which is recent is that Mr. Hay

17 unfortunately has had hip surgery since the trial ended.  He

18 had hip surgery on his right hip, and that's why you see him

19 seated today with the walker and the ice on his hip.

20        He does have follow-up appointments for that I believe

21 on December 21st, and we ask the court to consider whether or

22 not particularly he would get adequate care for that.  I don't

23 have the details of what follow-up is required right now, but

24 whether or not follow-up adequate care would be provided by

25 BOP.

1        So in large part what's based in our sentencing

2   memorandum, the testimony the court has heard, the fact of

3   Mr. Hay's service to his country, we do ask and believe that

4   the information included in the sentencing memorandum supports

5   a downward variance in this case and we do ask for probation so

6   he can remain in the community.  And that is all I have.

7        THE COURT:  Thank you.

8        Mr. Oakley.

9        MR. OAKLEY:  Your Honor, likewise I won't repeat

10  everything that was stated in the sentencing memo, but this is

11  a serious crime that occurred over more than a decade.  This is

12  not a situation where the defendant was facing hard times and

13  chose to commit a crime on an isolated incident or two isolated

14  incidents.  But this is something he chose to do for more than

15  15 years.

16       Related to the PTSD based on the testimony at trial,

17  it's likely that he suffers some sort of PTSD.  Based on the

18  testimony of, you know, his reaction to fireworks, I think that

19  is probably true.  The problem is the defendant has lied for so

20  long about his conditions, it's hard to tell.

21       The fact of the matter is just certainly during the

22  Fourth of July he may have had effects, he may have had effects

23  when fireworks are going off, but I think the testimony and the

24  evidence at trial was for most of the year, for most of the

25  defendant's life he's not been affected.

1        He was able to work.  He did work.  He worked a very

2    hard job going out and collecting scrap metal, lifting heavy

3    items.  He was a farmer.  He was a hay farmer.  He was able to

4    do these things.  So certainly he likely has PTSD, but it

5    hasn't affected him to the extent that he claims, and while

6    certainly a factor, it's not a factor that would rise to the

7    level for a variance to probation.

8        We think that a guideline sentence is appropriate

9    given the length of the time that the defendant committed this

10   offense, given the defendant's conduct up to trial.  In the

11   sentencing memo we talk about how the defendant presented

12   himself, and the court pointed out at the limine conference

13   that it was very visible.  Well, at trial we presented evidence

14   from the day before when he's selling scrap metal, and there

15   was no visible shake; he was able to sell more than a thousand

16   pounds worth of scrap metal.  Because of the defendant's lies

17   and deceptions it's really hard to tell what his true maladies

18   are.

19       What is obvious and what the jury found is he doesn't

20   have conversion disorder, doesn't have it to the extent he

21   claimed, that he claimed he was unable to drive, unable to work

22   because he did those things.

23       We talk about the 3553(a) factors in the memo, and all

24   of them support a sentence of imprisonment.  We ask the court

25   to impose the low end of the guideline range.  We think it's

1    appropriate.  We think that it follows through with the factors

2    of a sentence that's appropriate, but not greater than

3    necessary, given the nature and circumstances of this offense,

4    given the deterrent value that a sentence of imprisonment would

5    hopefully go to the larger community, to somebody that would

6    learn about this type of offense, and so we ask that you impose

7    the low end.

8           THE COURT:  All right.  Before I proceed -- and the

9    way I'll proceed is by announcing a tentative sentence, and

10   I'll hear any further objections, requests, and the like from

11   the parties.

12          But before I proceed any further, Mr. Hay, you have

13   the right to address me directly on your own behalf.  Is there

14   anything you'd like to say at this time?

15          THE DEFENDANT:  Yes, Your Honor.  This is somewhat

16   lengthy.

17          THE COURT:  If you're going to read something, I just

18   ask you to not read too quickly so the court reporter can make

19   sure she can take down every word.

20          THE DEFENDANT:  I appear in this courtroom with a

21   heavy heart.  I stated from the beginning that if you chose to

22   hang me, you'd be hanging an innocent man.

23          From the beginning the prosecutor lied to the court

24   about the offering of the plea deal, and the court dismissed me

25   even though I have a copy.  Why would I have a copy if they

1   didn't offer it?

2        The court then advised the jurors not to seek

3   understanding of what they were making judgment on.  The

4   prosecution used cherry-picked videos of my defense -- the

5   prosecution used cherry-picked videos.  But my defense chose

6   not to use my videos as they could say they were staged even

7   though they were from years past.

8        The prosecution used people publicly known to hate me,

9   but the defense chose not to use witnesses to refute them.  The

10  defense told me early on that they did not have a defense, that

11  it was the prosecution's job to make me look like social trash

12  regardless of the facts.  So tell me where is the true justice

13  in that?

14       The entire court case was prosecuted on two issues:

15  The statement I do not drive and the time and manner that I

16  used my cane or walker.  On the statement I do not drive, no

17  one ever asked what the question was.  The question is, do you

18  drive while having an episode?  As for the cane and walker, I

19  use them as needed for my safety, not at the discretion of the

20  VA.

21       To set the court's understanding straight on the

22  issues, neither one has any bearing on the guidelines and

23  qualifying requirements for my ratings in Book C of Title 38

24  Part Four of the federal regulations for the VA.  If anyone had

25  read the book, they would have known this.

1          As for my physical disposition here today, I present

2    myself as living proof that the prosecutor lied and corrupted

3    the legal system.  He repeatedly told the jury that my cane was

4    just a prop.  At no time did anyone ask what my medical state

5    was.  The defense was made aware of my need for surgery and did

6    not defend me against these lies.

7          I had total hip replacement surgery on the 8th of

8    December and will have follow-up appointments for these -- this

9    surgery, and as I heal up, I'll need to schedule surgeries for

10   the other hip, both knees, and both shoulders, and my spine.

11   All of these stem from the 2005 accident and other military

12   activities.

13         The neuropathy in my arms and legs and the conversion

14   disorder overlay on these medical issues very directly.  The

15   only crime committed was the VA's fraudulent denial of medical

16   ratings that they have been aware of for several years followed

17   by the medical issues that became acknowledgeable with the

18   signing of the burn pit act.

19         The VA's heavy-handed charges of fraud against me to

20   cover up their overwhelming fraudulent activity against me is

21   appalling.  The VA has even scrubbed my file to remove some

22   wartime line of duty injuries from my file.  Who gave the VA

23   the authority to dismiss me like that?

24         As we have seen, the court has ran its course bringing

25   us here today, Your Honor.  You have a complicated decision to

1  make.  I have always carried a high moral compass.  I have

2  served God, country, and family, and there are those who I am

3  so connected to such as my grandson Milo that any separation

4  would be psychologically and sociologically a death sentence

5  for him as he already has ADHD.  My wife and daughters will

6  also have psychological and social meltdowns too.

7        As the court can see, as course as I am, I still

8  remain a strong bond with my church family and friends, and

9  undoubtedly, the outcome of today will steer their views of our

10 country and the court system.

11       As far as my country, I have always been an advocate

12 for the military, and with my strong moral compass I will

13 always maintain a high level of respect for these areas of my

14 life.

15       I ask the court to subscribe to the most lenient

16 options possible and set the surrender date as far out as

17 possible as I can take care of my medical issues that I am

18 allowed to if I must be confined.  Thank you, Your Honor.

19       THE COURT:  Thank you, Mr. Hay.

20       So to the total offense level in this case is 21.  The

21 criminal history category is one.  For custody on Count 1

22 through 6 the maximum term of custody is 20 years.  On Counts 7

23 through 16 the maximum by statute is ten years.  The guideline

24 range is 37 to 46 months.

25       The court's tentative sentence on Counts 1 through 16

1   is 37 months to run concurrently for a controlling sentence of

2   37 months followed by three years of supervised release on each

3   count to run concurrently for a controlling term of supervised

4   release of three years.

5          Three years is the maximum term of supervised release

6   under the statute or guidelines for all of these counts of

7   conviction.

8          Under the guidelines Mr. Hay is not eligible for

9   probation, but of course the guidelines are not mandatory.

10  Under the statute the court for each of these counts of

11  conviction could impose between 1 to 5 years of probation.

12  Given the court's tentative sentence of a custodial term of

13  sentence, the sentence will not include probation.

14         I do not intend to impose a fine.  The maximum fine by

15  statute is $250,000 for each of the 16 counts while the

16  guidelines recommend between 15,000 and 150,000.

17         Per statute and guidelines the sentence must include

18  an order of restitution, and in this case the amount of

19  restitution is $537,915.87.

20         Also mandatorily under the statute and guidelines the

21  sentence must include a $100 assessment for the Crime Victims

22  Fund, which is a total of $1,600.

23         The superseding indictment included a forfeiture

24  allegation, but there has not been a preliminary order of

25  forfeiture filed, so I did not know what the government's

1   intentions were with respect to forfeiture.

2         MR. OAKLEY:  We do not intend to include or seek a

3   forfeiture judgment, Your Honor.

4         THE COURT:  Okay.  The court is required pursuant to

5   18 U.S.C. Section 3553(a) to impose a sentence that is

6   sufficient, but not greater than necessary, to comply with the

7   purposes of sentencing identified that statute.

8         In determining the particular sentence to be imposed,

9   the court has considered the sentencing guidelines because they

10  promote uniformity in sentencing and assist the court in

11  determining an appropriate sentence by weighing the basic

12  nature of the offense as well as aggravating and mitigating

13  factors.  The court has considered the evidence presented at

14  trial, the sentencing memoranda, the statements of the parties,

15  and the presentence investigation report.

16        After reviewing the presentence report, the court

17  finds that the guideline range of 37 to 46 months is correctly

18  calculated based on a total offense level 21 and criminal

19  history Category 1.

20        This offense involves Mr. Hay falsely claiming

21  disability benefits from the Veterans Administration.  He did

22  this over a prolonged period of time.  He did it in a shady

23  fashion which I'll describe in a little more detail, and as a

24  consequence the loss to the VA is over $500,000.

25        There was substantial evidence that Mr. Hay

1   specifically, intentionally, knowingly, and willfully defrauded

2   the VA.  The VA did not defraud the VA.  Mr. Hay defrauded the

3   VA and the United States of America beginning in 2005, though

4   the indictment doesn't begin in 2005, but the jury heard

5   evidence and I witnessed that evidence beginning in 2005 when

6   Mr. Hay had that car accident, suffered a head injury, no one

7   disputed apparently that there were medical issues that arose

8   from that, and he first started seeking disability benefits

9   from the VA even in 2005-2006 timeframe.  He was lying to the

10  VA about the extent of his impairment and lying to the VA about

11  the extent of his medical issues.  That doesn't mean he didn't

12  have medical issues, but he was lying about the extent of them.

13          So we saw photographs of Mr. Hay actively engaged in

14  building a two-story house, 3100 square feet, maybe bigger.

15  Big house.  He's up on a scaffolding, he's on ladders, he's

16  with another man hoisting heavy windows to place them in the

17  framing on the second story.  He's down in a ditch that he was

18  involved in digging for the main water line.  He was engaged in

19  very heavy construction activity and labor even when he first

20  applied for VA disability benefits.

21          Mr. Hay served in wartime.  He served in the reserves.

22  He was -- he received medals.  I give honor to that and I give

23  homage to that because I think military service is a high

24  calling and it's sacrificial service, and I have respect for

25  anyone that serves in the Army, particularly in wartime.

1          But for that military service, I would be imposing a

2     much higher sentence frankly.  I would be imposing a longer

3     sentence because of the nature, extent, and frankly outrageous

4     nature of the fraud Mr. Hay, with the help of his wife who also

5     committed fraud, that they engaged for this prolonged period of

6     time and got over a half million dollars of benefits to which

7     he was not entitled.

8          He was entitled to benefits.  He had PTSD, if he had

9     other medical issues -- and in fact the evidence was that

10    Mr. Hay got other service-connected disability ratings for

11    other things not at 100 percent, and that's why I suppose he's

12    still getting a check from the VA every month, I think of about

13    $500.  But at the height of this fraud he was getting over

14    $4,000 a month, and that's because he lied to the VA and

15    claimed that his conversion disorder, if in fact he had

16    conversion disorder, was impairing him to such an extent that

17    he could not work, was impairing him to such an extent he was

18    entitled to an extra check for his wife as his aid and

19    attendance because allegedly he couldn't go to the toilet by

20    himself.  He couldn't feed himself all the time.  He couldn't

21    dress himself sometimes.

22         And none of that was true.  None of it was true.  You

23    can't not toilet yourself periodically and not dress yourself

24    periodically but get up every day and haul scrap you've

25    collected at curbside and go out and work on your family farm

1    and bale hay and stand up on moving hay trucks and throwing hay

2    bales down and feed cattle and do all of the things that he

3    claimed that he did when he filed a mechanic's lien so he could

4    get a lot of money out of his family farm that he said he had

5    been working on as the only farm manager for many, many, many

6    years.  You can't -- those things are inconsistent.

7              So he started out in 2005 claiming to be disabled from

8    conversion disorder, PTSD, and some other things, but then it

9    escalated.  He wasn't satisfied with that.  Next he had to

10   later down the line go to permanent and total disability.  And

11   of course the significance of that was to get the VA off his

12   back where he wouldn't have to go get those C&P examinations

13   periodically, and the VA gave it to him.

14             But he wasn't satisfied with that either.  He had to

15   get aid and attendance so his wife could get a check as if he

16   was totally infirm, which he was not.

17             So this was a huge fraud perpetrated on the

18   government, a huge fraud, and this is a system where when a

19   veteran goes in and says that they have something going on --

20   and particularly conversion disorder, there's no diagnostic

21   test; the way they diagnose this is apparently through

22   exclusion, and it's largely based on what the veteran is

23   telling them is going on, what he tells them and what he shows

24   them.

25             And what Mr. Hay consistently told them and showed

1  them when he went to these doctor appointments, he went in for

2  his compensation and pension exams, was that he was impaired

3  and he needed a walker or at least a cane and he had episodic

4  shaking and involuntary motor movements and he couldn't drive

5  or he couldn't drive much, and he kept saying it was episodic

6  and he couldn't tell when it was going on, et cetera, et

7  cetera.  And they trusted that and they believed that because

8  that's the way the system works.

9          I suppose they believe that someone that will go to

10  Afghanistan or Iran or Vietnam, or wherever they go put their

11  life on the line, is so honorable that they won't come back

12  from that military service and act dishonorably.  This system

13  is based on trust, that veterans are honorable and that they're

14  not going to defraud the system that is in place to help them.

15  And probably that's the way it most of the time works until

16  somebody like Mr. Hay comes along who engaged in honorable

17  military service and then comes home and acts dishonorably,

18  defrauding the very systems in place to help people like him

19  who probably did come back from wartime with PTSD or other

20  problems, who, you know, are entitled to go to school on the GI

21  Bill even if they don't have a disability.

22          That program has been in place for, what, 80 years,

23  post-World War II, GI bill; you don't have been to disabled.

24  Mr. Hay took advantage of that, and that's not part of the

25  fraud, but I'll never forget that he told one of his examiners

1    that he got this bachelor's degree in management from I think

2    it was Mid-America Nazarene, and in his words it was a bunch of

3    bullshit.  So can taxpayers spent money for him to get a

4    college degree and he referred to it as bullshit.  And frankly

5    I think that's the way Mr. Hay looked at all of this; it was a

6    bunch of BS, that he could game and get as much as he could

7    possibly bleed out of the system.

8          He had no regard and no respect for this system, and I

9    think it was evident today, Mr. Hay, when you read your

10   statement to me you still have no regard and no respect for

11   this system because in your mind, you know, they owe you more.

12   It's never going to be enough.  They owe you more.  They're the

13   bad guys.  Because you served, you're entitled to anything you

14   want.  That's the way you presented for the last 15 years.

15   That's the way you present today.

16         And I take all of that into consideration in

17   determining that this is a case where there should be a

18   guideline sentence imposed.  This is a Heartland case.  In

19   fact, this is a case where I could certainly justify giving a

20   longer sentence than I'm going to impose, but because of these

21   3553(a) factors, I am giving significant weight to the fact

22   that Mr. Hay is a war veteran.

23         I have to consider in determining the appropriate

24   sentence the following:  I have to consider what would be a

25   sentence that is sufficient, but not greater than necessary, to

1    reflect the seriousness of the offense.  I'm not going to

2    repeat myself.  I've just told you how serious I think this is.

3         I have to give a sentence that will promote respect

4    for the law.  Mr. Hay has no respect for the law, none

5    whatsoever.  It's evident in the way that he treated the VA,

6    and not just the VA, he got Social Security disability

7    benefits.  And there was a point when he was getting VA

8    disability and Social Security disability, and to be clear, I'm

9    not saying -- I am not finding that he was not entitled to any

10   disability benefits.  I'm just saying that he defrauded the

11   system in going after full benefits, 100 percent disability

12   when he clearly was not 100 percent disabled.

13        But there was a point when he was getting VA; he was

14   getting Social Security.  Meanwhile he gets unemployment

15   compensation benefits.  He applies for unemployment

16   compensation benefits, which means you have to attest that you

17   are ready, willing, and able to work, and then of course, you

18   know, he's getting farm subsidies and representing that he's

19   the only farm laborer.  That's another government entity.  And

20   then of course, you know, he's got the mechanic's lien on the

21   family farm, so he's trying to get his cake and eat it too.

22        He's getting benefits based on him working, and he's

23   getting benefits based on his inability to work.  No respect

24   for the law.

25        I have to impose a sentence that will provide just

1  punishment for the offense, and as I've said, I think just

2  punishment in a case like this is one that's within the

3  guideline range.

4         I have to impose a sentence that will afford adequate

5  deterrence to criminal conduct.  I am not at all convinced

6  right now that Mr. Hay is specifically deterred from proceeding

7  to engage in other fraudulent activity based on his nature and

8  his characteristics, but when I think about general deterrence,

9  that's important too, and I'll remember the neighbors of the

10 family farm that both testified, the married couple, both

11 veterans, both came back into the community, got benefits, went

12 to work, which is what Mr. Hay should have done.

13        And so when you think about people in the community,

14 veterans or even not who are aware because they saw Mr. Hay in

15 other context in the community aware that he got $500,000-plus

16 in VA disability benefits yet was acting in the community the

17 way he's acting, there's some real strong compelling reasons

18 for me to impose a prison sentence to generally deter others

19 from engaging in this kind of fraudulent conduct and to

20 essentially steal money from a system that was designed to help

21 people that are entitled to our help.

22        Finally, protect the public from further crimes of the

23 defendant.  I have absolutely no confidence that Mr. Hay given

24 the opportunity wouldn't continue to engage in fraud of some

25 sort at this point in life.

1        The term of supervised release in addition to the

2   imprisonment sentence will allow the defendant the opportunity

3   to receive correctional treatment in an effective manner and

4   assist with community reintegration.

5        The court intends to order a special assessment of

6   $100 per count, for a total of $1,600, to the Crime Victims

7   Fund.

8        The court does not intend to impose a fine as

9   imposition of such would hinder Mr. Hay's ability to pay

10   restitution.

11        The superseding indictment includes a forfeiture

12   allegation.  The government has indicated they do not intend to

13   proceed with that.

14        The court makes the following restitution findings

15   based on a preponderance of the evidence and the presentence

16   report:  Restitution totalling $537,915.87 is owed to the

17   Veterans Administration.  Pursuant to the provisions of 18

18   U.S.C. Section 3663(a) and 3664, the court is required to order

19   restitution in the full amount of the victim's losses as

20   determined by the court and without consideration of the

21   economic circumstances of the defendant.  The court intends to

22   waive interest on restitution.

23        The court intends to impose the mandatory and special

24   conditions of supervision set forth in Part D of the

25   presentence report.  There is a financial condition that

1  restricts new credit charges or accounts and requires providing

2  release of information forms to the U.S. Probation Office to

3  access financial information.  This is necessary to ensure that

4  restitution is paid to the victim and to protect the public

5  from further crimes of the defendant.

6          Mr. Hay has a documented mental health history, so a

7  special condition requiring mental health treatment will allow

8  him to receive counselling to address mental health issues and

9  provide him with needed medical care.

10         Finally, the nature of the offense and Mr. Hay's

11  complete and utter failure to take responsibility for his

12  actions warrant participation in a cognitive behavioral program

13  which may include moral reconation therapy.  This program will

14  assist in changing Mr. Hay's thinking patterns and will address

15  protection of the public from further crimes of the defendant

16  as well as provide the defendant with needed correctional

17  treatment.

18         I'll make one more observation in response to

19  something that Mr. Hay said.  He said that this case boiled

20  down to whether he needed to use a cane or walker and whether

21  he could never drive, and those are referencing VA rating

22  criteria, which obviously he's quite familiar with.  No, the

23  case didn't just boil down to those things.  It boiled down to

24  all kinds of other representations that Mr. Hay and his wife

25  made to the VA and these examining doctors and examiners about

1   what he could and couldn't do.

2        And I will tell you there was a lot of circumstantial

3   evidence here, but the jury also saw with their own eyes, and,

4   granted, these cameras weren't on 24 hours a day, but they were

5   on for periods of time in front of Mr. Hay's house, so the jury

6   got to see how he behaved in front of his house and in the

7   driveway when he didn't think eyes were on him.  They got to

8   see how he behaved at Sam's Club.  They even got to see how he

9   behaved in the doctor's office parking lot where, in my view,

10  he put on a quite a performance coming and going, but when he

11  sees coins on the ground, he doesn't hesitate to stoop and pick

12  them up.

13       But there was lots of kind of circumstantial evidence

14  from which one could infer that it was performance art in large

15  part.  And one thing that I recall is we heard again and again

16  from Mr. Hay, things his wife said as well, that, you know,

17  this isn't 24/7; these are episodes.  And I think the medical

18  professional said that too.  Conversion disorder is a

19  neurological disorder.  It presents seizure-like activity or

20  involuntary movements, episodic.  It's not all the time, which,

21  okay, may mean you can drive, may mean you can do certain

22  things at certain times.

23       But we also heard both from the medical professionals

24  and out of Mr. Hay's mouth and his wife's mouth that these came

25  on without warning.  That's the way conversion disorder works.

1    And I'll never forget seeing Mr. Hay walk out of his house and

2    carry Milo, I assume it was.  It was an infant in an infant

3    carrier, carry that baby to his truck, put that baby in the

4    truck in the infant carrier, and Mrs. Hay is right behind him.

5    And I'm thinking why in the world if you've got episodic,

6    unplanned seizure, whatever you want to call it, movements

7    would you trust yourself to carry an infant and put the infant

8    in the infant carrier to the car and lock it in when Mrs. Hay

9    was freely available to do that?

10           I don't think, Mr. Hay, you recognize how damaging

11   those videos were and how just common sense people could look

12   at those and say there are things he's doing that there's no

13   way he would do if what you say what was happening in your life

14   was really happening.  And that would include such things as

15   hauling a couple thousand pounds of scrap in a truck to another

16   town or another county, however far that might be, by yourself

17   on sometimes almost a daily basis.

18           I mean we could go on and on and on.  The evidence

19   here was very strong and it was very compelling, and the jury's

20   verdict was warranted, and Mr. Hay has not accepted

21   responsibility for any of this.

22           Mr. Hay is on bond.  He has complied with the

23   conditions of release, so voluntary surrender is appropriate.

24           Are there objections by the government to the sentence

25   as tentatively announced?

1        MR. OAKLEY:  No, Your Honor.

2        THE COURT:  Are there objections by the defendant to

3    the sentence as tentatively announced?

4        MS. RAMSEY:  No, Your Honor.

5        THE COURT:  One other observation I'll make, Mr. Hay,

6    and that is in your statement you were complaining about your

7    representation.  You received incredibly effective

8    representation.  Given the evidence and given what could be

9    worked with, you had two lawyers, two of the best lawyers in

10   the state.  I've often said if I were indicted in federal

11   court, I would want the Federal Public Defenders Office

12   representing me because this is all they do.  They're highly

13   qualified.  They all have excellent educations and many, many

14   years of experience.  And despite this extremely strong and

15   compelling evidence, I think they gave you the very best

16   defense they possibly could have given you.  You received

17   highly effective assistance of counsel, but when you're guilty,

18   you're guilty.

19        All right.  The court determines that the

20   presentence -- Ms. Ramsey, are there any requests for

21   designation?  My intention was to recommend placement at

22   Springfield Federal Medical Center because Mr. Hay does have

23   medical issues.  That's a hospital, one of two or three in the

24   federal system.  And that's not saying he'll go there.  They're

25   going to assess him and figure it out for themselves, and maybe

1    they'll think he belongs there or maybe they'll think he

2    doesn't.  But that will be my recommendation, and they do honor

3    that if they can.  If that's not what he wants or if you have a

4    different recommendation, that's fine.

5                MS. RAMSEY:  May I have one moment?

6                THE COURT:  Sure.

7                MS. RAMSEY:  Yes, Your Honor, we would agree with that

8    recommendation.

9                THE COURT:  All right.  The court determines that the

10   presentence investigation report as corrected or modified by

11   the court and the previously stated findings are accurate and

12   orders those findings incorporated in the following sentence:

13               Pursuant to the Sentencing Reform Act of 1984 it is

14   the judgment of the court that the Defendant Bruce Hay is

15   hereby sentenced to the custody of the Bureau of Prisons for a

16   term of 37 months on each of Counts 1 through 16 to run

17   concurrently.  The court will recommend he be designated to

18   Springfield Federal Medical Center so that his medical issues

19   can be addressed while he's incarcerated.

20               This term of imprisonment shall be followed by three

21   years of supervised release on each of Counts 1 through 16 to

22   run concurrently.

23               Within 72 hours of release from the custody of the

24   Bureau of Prisons Mr. Hay shall report to the U.S. Probation

25   Office in the district in which he is released.  While on

1    supervised release, he shall comply with the mandatory and

2    standard conditions adopted by this court and the special

3    conditions of supervision set forth in Part D of the

4    presentence report.

5        It is ordered Mr. Hay shall pay the United States a

6    special assessment of $100 for each count, totalling $1,600, to

7    the Crime Victims Fund.  Pursuant to 18 U.S.C. Section 3013

8    payment of the assessment is due immediately and may be

9    satisfied while in Bureau of Prisons custody.  Imposition of a

10   fine is waived.

11       Pursuant to 18 U.S.C. Section 3663(a) Mr. Hay is

12   ordered to pay restitution in the amount of $537,915.87 to the

13   victims previously identified by the court.  Payments shall be

14   made to the Clerk U.S. District Court, U.S. Courthouse, Room

15   204, 401 North Market, Wichita, Kansas, 67202.  The restitution

16   is due immediately and shall be satisfied in payments of not

17   less than 10 percent of the funds deposited each month in the

18   defendant's inmate trust fund account and monthly installments

19   of not less than 5 percent of his monthly gross household

20   income over the three years of supervised release to commence

21   30 days after his release from imprisonment.  Interest on

22   restitution is waived.  The court orders --

23       Both the government and defendant are advised of their

24   respective rights to appeal this sentence and conviction.  An

25   appeal taken from this sentence is subject to 18 U.S.C. Section

1    3742.  Mr. Hay is advised that it is your right to appeal the

2    conviction and sentence.  You must timely file a notice of

3    appeal here in the district court so you don't lose your right

4    of appeal.

5          Rule 4(b) of the Federal Rules of Appellate Procedure

6    gives you 14 days after the entry of judgment to file a notice

7    of appeal.  If you request, the clerk of the court shall

8    immediately prepare and file a notice of appeal on your behalf.

9    If you're unable to pay the cost of an appeal, you have the

10   right to apply for leave to appeal in forma pauperis.

11         Voluntary surrender is granted, so Mr. Hay will report

12   to the facility designated by the Bureau of Prisons when he's

13   notified by the U.S. Marshals.  Today before you leave the

14   building, you need to check in with the Marshal Service to get

15   more information about that.  I'm not going to delay the report

16   date.  I don't know what they're running, 30, 45 days out, at

17   least 30 days out usually.  So you'll be home for Christmas at

18   least, but you'll need to report when they tell you to report.

19         One final thought, Mr. Hay, because a lot of times

20   when people are convicted of fraud offenses and they've never

21   been in trouble before, and you're in that category obviously,

22   they have this idea that they're not like people in prison;

23   they're better than people in prison.  They look down on people

24   in prison because they have families and they're good parents

25   and they're -- they're good grandparents and they go to church

1  and, you know, all of those things.  And I want you to know

2  you're going to find lots of people in prison just like you

3  that go to church, that have great relationships with their

4  family, and perhaps have never been in trouble before, but

5  they've done something bad enough that they're in prison now

6  just like you.  You're no better than anybody else in prison,

7  and hopefully that's one of the things you figure out in your

8  journey from the very beginning.

9         You're going to find people that have done some pretty

10 awful things, there's no question about that, but you're also

11 going to find other people that have done bad things just like

12 you and made poor judgments just like you and are working their

13 best to put it behind them and come back out in the community

14 and do all the right things, and I hope that's what will happen

15 for you.  So I wish you the best.

16        All right.  We'll be in recess.

17     (The proceedings were adjourned at 10:53 a.m.)

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2       I, Danielle R. Murray, a Certified Court Reporter and the

3  regularly appointed, qualified, and acting official reporter of

4  the United States District Court for the District of Kansas, do

5  hereby certify that the foregoing is a true and correct

6  transcript from the stenographically reported proceedings in

7  the above-entitled matter.

8       SIGNED 9th of February, 2023

9
                          /s/Danielle R. Murray
10                        DANIELLE R. MURRAY, RMR, CRR
                          United States Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25